IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Buford "Chad" McDowell and Rachel Riley, individually and on behalf of all those similarly situated<br><br>　　　　　　Plaintiffs,<br>　　v.<br><br>Jasper County,<br><br>　　　　　　Defendant. | Case No. 9:23-cv-04706-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Defendant's motion for summary judgment. (Dkt. No. 28). Plaintiffs filed a response (Dkt. No. 30), and Defendant replied (Dkt. No. 32). For the reasons set forth below, the Court grants Defendant's motion.

**I.     Background**

Plaintiffs, former Canine Handlers for Jasper County, bring this action on behalf of a purported class of similarly situated plaintiffs seeking recovery of "premium pay" they were denied by virtue of their status as former, rather than active, employees of Jasper County on the date Defendant disbursed the payment. Plaintiffs contend Defendant's decision to limit "premium pay" only to active employees violated their state and federal constitutional rights.

Pursuant to the American Rescue Plan Act of 2021 ("ARPA"), the federal government allocated Coronavirus State and Local Fiscal Recovery Funds (SLFRF) to states and localities for purposes of aiding in pandemic recovery. The U.S. Department of the Treasury issued guidance to states regarding the distribution of the SLFRF, instructing the funds could be used for a variety of purposes including "provid[ing] premium pay to eligible workers . . . who perform essential

1

work or to provide grants to eligible employers that have eligible workers who perform essential work, provided that any premium pay or grants provided under this paragraph (c) must respond to eligible workers performing essential work during the COVID–19 public health emergency." C.F.R., Subt. A, Part 35. In 31 C.F.R. § 35.6(c). The Treasury Rule defined eligible workers as:

> workers needed to maintain continuity of operations of essential critical infrastructure sectors, including health care; emergency response; sanitation, disinfection, and cleaning work; maintenance work; grocery stores, restaurants, food production, and food delivery; pharmacy; biomedical research; behavioral health work; medical testing and diagnostics; home- and community-based health care or assistance with activities of daily living; family or childcare; social services work; public health work; vital services to Tribes; any work performed by an employee of a State, local, or Tribal government; educational work, school nutrition work, and other work required to operate a school facility; laundry work; elections work; solid waste or hazardous materials management, response, and cleanup work; work requiring physical interaction with patients; dental care work; transportation and warehousing; work at hotel and commercial lodging facilities that are used for COVID–19 mitigation and containment; work in a mortuary; and work in critical clinical research, development, and testing necessary for COVID–19 response.

(*Id.* 31 C.F.R. § 35.3). The Rule further defined "essential work" as work that:

(1) Is not performed while teleworking from a residence; and

(2) Involves:

> (i) Regular, in-person interactions with patients, the public, or coworkers of the individual that is performing the work; or

> (ii) regular physical handling of items that were handled by, or are to be handled by, patients, the public, or coworkers of the individual that is performing the work.

(*Id.*). Plaintiffs contend they "were 'eligible workers' because their service as Sheriff's Deputies was essential work needed to protect the health and well-being of the residents of Jasper County"

such that they "were entitled to receive premium pay from the funds provided the Defendant by the federal government." (Dkt. No. 21, ¶¶ 39, 42).

Plaintiffs McDowell and Riley left their positions with the Jasper County Sherriff's Office in March 2021. (*Id.*, ¶¶ 35-36). Defendant received its first allocation of SLFRF on July 19, 2021, and the second allocation "in or around July 2022." (Dkt. No. 28-1 at 6). Defendant published a Resolution outlining its plan for disbursing the SLFRF on September 20, 2021, specifying as a condition that only employees who were active on the date of payment would receive premium pay. (Dkt. No. 21, ¶¶ 29-31). Defendant subsequently disbursed the first "premium payment" to active employees on September 25, 2021. (*Id.*, ¶ 28). As Plaintiffs were no longer in Defendant's employ, they did not receive any premium pay. (*Id.*, ¶ 37).

## II.     Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

3

U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.     Discussion

Plaintiffs allege Defendant's failure to deliver premium pay to Plaintiffs for their work between March 16, 2020 and March 2021 violated their constitutional rights to equal protection, due process, and protection from an unlawful taking. Plaintiffs seek additional relief under state law and equity. As Defendant notes, the claims levied by Plaintiffs in this case and in *McDowell* (23-4706) are nearly identical to the causes of action raised by the Plaintiffs in *Kitchens et al. v. Lexington County* (3:23-cv-0336-CMC), who were represented by the same counsel as Plaintiffs in this case. In *Kitchens*, the district court confronted the same issue this Court must determine here – "whether [Lexington County's] distribution of ARPA premium pay only to 'current employees' comports with the federal and state Constitutions and state law." *Kitchens et al. v.*

*Lexington Cnty.*, No. 3:22-CV-2897-CMC, 2024 WL 3656460, at *1 (D.S.C. Apr. 12, 2024). The *Kitchens* Court granted summary judgment in favor of the County on all counts.

The Court regards Judge Currie's opinion addressing a parallel factual and legal scenario as highly persuasive. With reference to that opinion, the Court begins by discussing Plaintiffs' constitutional claims before reaching their causes of action arising under state law and equity.

### A. Constitutional Claims

Plaintiffs claim Defendant's decision to withhold premium pay from them because they were no longer active County employees constituted a violation of their constitutional rights to equal protection and due process, and further contends that such action constituted an unlawful taking. (Dkt. No. 21, ¶¶ 93-103). Per Defendant, Plaintiffs cannot show that Defendant's decision was not rationally related to a legitimate goal, such that Plaintiffs' constitutional arguments fail under rational basis review. (Dkt. No. 28-1 at 8).

#### 1. Violation of the Guarantee to Equal Protection of the Law (Third Cause of Action)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The South Carolina Constitution contains a similar guarantee that "[t]he privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged . . . nor shall any person be denied the equal protection of the laws." S.C. Const. Art. I, § 3. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court

proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

"The Equal Protection Clause does not forbid classifications" but rather "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). And "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Id.* Rational basis review "represents a powerful presumption of validity" which requires a "steep" showing to overcome by demonstrating there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Doe v. Settle*, 24 F.4th 932, 943 (4th Cir. 2022). "[T]hose attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'" *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

The Court applies rational basis review to Plaintiffs' claim that Defendant's decision to award premium pay only to active employees constituted an equal protection violation. Defendant offers two bases for its decision to make the payment only to active employees: "the potential administrative nightmare of tracking down and paying no less than 150 former employees" and its desire to "reward those employees who remained who had worked through the Coronavirus disaster period and had remained with the [C]ounty." (Dkt. No. 28-1 at 10). Plaintiffs fail to rebut either explanation, and in this Court's view, cannot negate "every conceivable basis" which might support Defendant's decision to pay bonuses only to those employees who remained active employees at the time Defendant disbursed the funds. *Beach Commc'ns*, 508 U.S. at 315. As a

plainly rational basis for the County's classification exists supporting the legitimate government purpose of awarding public employees for their past and continued government service, Plaintiffs cannot overcome the steep presumption of validity afforded to the County's classification. The Court grants summary judgment to Defendant on Plaintiffs' equal protection claim.

### 2. Unlawful Taking (Fourth Cause of Action) and Violation of Due Process (Fifth Cause of Action)

Plaintiffs' other constitutional claims must fail because Plaintiffs had no property interest in the SLFRF funds. "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests *that a person has already acquired* in specific benefits." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972) (emphasis added). "An 'abstract need or desire' or 'unilateral expectation' of some property right is not enough." *Id.* at 577. "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

Government officials could grant or deny premium pay in their discretion, and as such Plaintiffs have no protected property interest in the SLFRF funds. As aptly noted by Judge Currie, the ARPA was discretionary in nature and allowed "recipients the ability to tailor their Premium Pay programs to meet their needs," providing that the funds "*may* be used to provide Premium Pay to eligible workers performing essential work during the pandemic." (Dkt. No. 28-4 at 18). Plaintiffs had not acquired any interest in the SLFRF funds prior to their resignation – in fact, Defendant had not even received them. A Resolution to Jasper County employees providing notice of the premium payment and setting out the conditions of receiving the funds was not distributed until over two months after Plaintiffs' resignation. (Dkt. No. 21, ¶¶ 29-31). Because Plaintiffs

7

had no entitlement to premium pay, the Court grants summary judgment to Defendant on each of Plaintiffs' constitutional claims.

## B. Plaintiffs' Remaining Claims

Judge Currie declined to reach the remainder of Plaintiffs' claims upon determining that Plaintiffs had no entitlement to premium pay. The Court briefly touches upon each of Plaintiffs' remaining causes of action.

### 1. Violation of the South Carolina Payment of Wages Act ('SCPWA') (First Cause of Action)

Plaintiffs argue the premium pay they did not receive constitutes "unpaid wages due and owed that are recoverable pursuant to South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110." (Dkt. No. 21, ¶ 76). Defendant explains the SCPWA does not apply given "Plaintiffs do not allege that the County withheld the wages the parties agreed to at the time they were hired or at any time during the term of their employment." (Dkt. No. 28-1 at 18).

Relevant here is whether the premium pay constitutes "wages" under the SCPWA. The Court concludes that it does not. The Act defines wages as:

> all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract. Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.

S.C.Code Ann. § 41–10–10(2) (Supp. 2009) (emphasis added). "[T]he relevant date for determining whether the employer reasonably withheld wages is the time at which the wages were withheld, i.e., when the employer allegedly violated the Act." *Mathis v. Brown & Brown of S.C., Inc.*, 698 S.E.2d 773, 782 (S.C. 2010). It is undisputed that Plaintiffs were no longer employed by

Defendant at the time the SLFRF funds were received and disbursed to employees. No policy or contract provided for the disbursement of premium pay to Plaintiffs. Because the premium pay does not fit the definition of "wages" under the Act, Plaintiffs cannot sustain their claim under the SCPWA. The Court grants summary judgment to Defendant on this claim.

### 2. Breach of Contract as Third-Party Beneficiaries (Sixth Cause of Action)

Plaintiffs contend they were "intended third-party beneficiaries of the contract between Defendants and the federal government." (Dkt. No. 21, ¶ 111). Defendant argues that no contract was formed between Jasper County and the federal government, as "federal awards and grants created by statute are statutory in nature, not contractual." (Dkt. No. 28-1 at 19). Per Defendant, even assuming Jasper County entered into a contract with the federal government pursuant to the receipt of SLFRF funds, Plaintiffs could not have been intended third-party beneficiaries where the agreement was entirely discretionary in nature and the County had no contractual obligation to issue premium pay to Plaintiff. (*Id.* at 21).

The Court determines that, even assuming a contract was formed between Defendant and the federal government, Plaintiffs were not intended third-party beneficiaries because the purported agreement's terms were entirely discretionary. "A third-party beneficiary is a party that the contracting parties intend to directly benefit." *Helms Realty, Inc. v. Gibson–Wall Co.*, 611 S.E.2d 485, 488 (S.C. 2005). At most, Plaintiffs had the potential to incidentally benefit from the "contract" *if and only if* Defendant opted to direct the funds to employees. As Judge Currie noted, "It is not disputed Defendant retained discretion under 31 C.F.R. § 35.6(c) to determine, in the first instance, whether to expend a portion of its ARPA funding on employees who provided essential services during the pandemic" and at issue was "whether Defendant's discretion extended beyond the initial decision whether to segregate an amount of its ARPA funds for premium pay." (Dkt.

9

No. 28-4 at 18). That Defendant had such ample discretion counsels against a finding that Plaintiffs were intended third-party beneficiaries of the SLFRF. The Court grants summary judgment to Defendant on this claim.

### C. Money Had and Received (Second Cause of Action)

Plaintiffs cannot sustain their claim for money had and received. "An action for money had and received exists where a defendant has money belonging to the plaintiff which in equity should be repaid to the plaintiff." *Okatie River, L.L.C. v. Se. Site Prep, L.L.C.*, 577 S.E.2d 468, 472 (S.C. Ct. App. 2003). As discussed above, Plaintiffs did not have any entitlement to the premium pay. The Court grants summary judgment to Defendant on this claim.

### D. Declaratory Judgment (Seventh Cause of Action) & Injunctive Relief (Eighth Cause of Action)

Plaintiffs have failed to cite a genuine dispute of material fact supporting any of their claims for relief. The Court denies their requests for a declaratory judgment and injunctive relief.

## IV.     Conclusion

In light of the foregoing, Defendant's motion for summary judgment is **GRANTED**. (Dkt. No. 28).

**AND IT IS SO ORDERED.**

                                                   s/Richard M. Gergel
                                                  Richard Mark Gergel
                                                  United States District Judge

August 16, 2024
Charleston, South Carolina